**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel. MICHAEL MORGAN,** Relator, vs. **VINCENT PUMA, MARIO MONELLO, THAE KWEON, THOMAS PINOU, ST. MARK'S WORLD ACQUISITIONS LLC, IOS STAFFING LLC, & PROSPERITY BANK,** Defendants. | **Case No. 26-cv-02760** <br> **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br> **AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT** <br> **JURY TRIAL DEMANDED** |

Relator, complaining of the Defendants through his attorneys, on behalf of the United States of America ("the Government" or the "Federal Government"), for his Complaint against defendants Vincent Puma, Mario Monello, Thae Kweon, Thomas Pinou, St. Mark's World Acquisitions LLC ("SMWA"), IOS Staffing LLC ("IOS"), and Prosperity Bank, alleges based upon personal knowledge, relevant documents, and information and belief, as follows:

## I. INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and/or claims made and caused to be made by Defendant(s) and/or its agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729 et seq. ("the FCA"). The FCA allows any person having information about an FCA violation to bring an action for himself and the Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit. Based on the foregoing

laws, *qui tam* Relator Dr. Michael Morgan seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendant's misconduct has extended.

2. This action seeks to recover fraudulently obtained CARES Act disaster relief funds that Defendants Puma, Monello, Kweon, Pinou, SMWA, and IOS obtained in the form of Paycheck Protection Program ("PPP") loans, by means of fraudulently inflating their number of employees and payroll, and for which these Defendants received loan forgiveness based on fraudulent representations to the Government.

3. Moreover, Defendants Puma, Monello, Kweon, Pinou, and SWMA fraudulently obtained PPP loan relief by applying to lender Defendant Prosperity Bank without an authorized representative signatory. Signatories on PPP loan applications must be authorized by each owner of twenty percent or more of the applicant's equity. Defendants lacked authorization from Relator, a twenty percent equity owner, to apply for loan relief, yet willfully misrepresented Relator's authorization. Defendant Prosperity Bank, despite knowledge of the fraud, processed the application and falsely granted the PPP loan money anyway.

## II. PARTIES

4. Relator Michael Morgan is a physical therapist, entrepreneur, and business owner residing in Port Washington, New York. At the time of the events underlying this action, he owned twenty percent equity of St. Mark's World Acquisitions, LLC ("SMWA").

5. Defendant Vincent Puma is the Managing Member/CEO of SMWA.

6. Defendant Mario Monello is the Principal/President of SWMA.

7. Defendant Thae Kweon is the Treasurer/President of SWMA.

8. Defendant Thomas Pinou is the Chief Financial Officer of SWMA.

9. Defendant St. Mark's World Acquisitions, LLC ("SMWA") is a privately held limited liability corporation headquartered at 501 Madison Avenue, New York, New York, which transacts business in the Southern District of New York.

10. Defendant IOS Staffing, LLC ("IOS") is a privately held limited liability corporation headquartered at 501 Madison Avenue, New York, New York, which transacts business in the Southern District of New York.

11. Defendant Prosperity Bank is a subsidiary of Prosperity Bancshares, Inc., a publicly traded corporation headquartered at 4295 San Felipe, Houston, Texas, which transacts business in the Southern District of New York.

## III. <u>JURIDISCTION AND VENUE</u>

12. This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. Section 3732(a), which provides that this type of action may be brought in any district where any Defendant resides or transacts business, or in which any act proscribed by 31 U.S.C. Section 3729 occurred. In this case, the Defendants transact business in the Southern District of New York. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. Section 3732(a) because that section authorizes nationwide service of process and because the Defendant has minimum contacts with the United States. Moreover, the Defendants can be found in and/or transacts or has transacted business in the Southern District of New York.

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Sections 1391(b)-(c) and 31 U.S.C. 3732(a) because the Defendants can be found in and/or transact or have transacted business herein, and because violations of 31 U.S.C. 3729 et seq. alleged herein occurred within this district. At all times relevant to this complaint, Defendants regularly conducted substantial business within this district.

## IV. BACKGROUND

14. Throughout most of 2020 and continuing into 2021, the United States was faced with a large-scale outbreak of the virus commonly known as "Coronavirus" and "COVID-19".

15. In light of the widespread economic disruption caused by the virus outbreak, the United States Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which sought to mitigate the economic harm suffered by U.S. businesses and workers.

16. The CARES Act created a Paycheck Protection Program ("PPP") which permitted qualifying businesses affected by Coronavirus-related economic disruption to obtain disaster relief funding in the form of forgivable Small Business Administration ("SBA") loans, designed to ensure that qualifying businesses would be able to continue making their employee payroll.

17. Relator Morgan was a twenty percent owner of SWMA in April 2020, through which Relator had access to swaths of insider information and documents, leading to his discovery of the fraudulent claims being perpetrated by Defendants described herein, the full extent of which only became apparent to Relator starting in late 2021.

18. Defendant St. Mark's World Acquisitions LLC ("SMWA"), by and through its corporate officers Defendants Puma, Monello, Kweon, and Pinou, applied for a PPP loan which was processed by lender Defendant Prosperity Bank. The loan was approved in the amount of

$447,800.00 (Loan Number 8507737007). On July 8, 2021, loan forgiveness was granted in the amount of $241,433.07.

19. When Defendants Puma, Monello, Kweon, and Pinou, on behalf of Defendant SWMA, submitted the Borrower Application on or about April 3, 2020, they fraudulently represented that they had authorization to do so from all owners with at least twenty percent equity in the company. On March 31, 2020, Relator Morgan explicitly and in writing refused to authorize the SBA-PPP loan. Relator was a twenty percent owner of SWMA whose authorization for the loan was required, rendering the entire loan application package fraudulent.

20. Additionally, Defendant Kweon fraudulently certified himself for purposes of the PPP loan application as the President of SWMA, a title which SWMA and its Defendant officers fraudulently ascribed to Defendant solely for purposes of making the false PPP loan claim.

21. Defendant Prosperity Bank (the PPP lender) was informed by Relator Morgan on April 17 and April 18, 2020, by telephone and in writing, that the Borrower Application was fraudulently authorized, but Prosperity Bank processed the loan anyway, thus profiting from their role in knowingly defrauding the Government. Moreover, Defendant Prosperity Bank distributed the funds into a newly created account, designed to be hidden from Relator's view, in knowing violation of the SWMA shareholder agreement and in furtherance of the fraud.

22. When Defendant Puma on behalf of Defendant SWMA submitted PPP Loan Forgiveness Application Form 3508EZ, on or about June 21, 2021, Defendant Puma falsely certified SWMA's eligibility for forgiveness, including falsely certifying that SWMA had 24 employees at the time the PPP loan application was made in April 2020. Relator's certified copies of SWMA's

payroll from April 2020 reveal that SWMA only had 4 employees in April 2020 (one being an independent contractor), not the 24 employees certified to by Defendant Puma.

23. Defendant IOS Staffing applied for a PPP loan which was approved for $2,887,400.00 (Loan Number 7251287004) on April 7, 2020. Defendant IOS received $2,920,545.77 in loan forgiveness on July 8, 2021, premised on fraudulent representations about how funds were used.

24. Defendants SWMA and IOS fraudulently inflated their eligibility for loan forgiveness by double-counting, when SWMA and IOS both obtained payroll forgiveness for the same set of employees. IOS employees were paid $185,000 from SWMA PPP loan funds, allowing SWMA and IOS to simultaneously obtain fraudulent loan forgiveness for those funds.

25. Defendants SWMA and IOS further distributed PPP loan funds to "employees" who were only then added to the payrolls as employees on paper only. For example, SWMA payroll funds were paid out to several new "employees" who were immediate family members of Defendant Monello, sharing the Monello last name but lacking any meaningful duties with the company.

26. Thus, along each stage of the process, from SWMA and its officers' initial application in April 2020, to processing by the lender, to the loan forgiveness received by both SWMA and IOS in June and July 2021, respectively, Defendants received (and the United States paid) substantial funds to which they would not otherwise have been entitled but for their fraudulent conduct and false representations to the Government.

## V. COUNT I: VIOLATION OF THE FALSE CLAIMS ACT

27. Relator re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above as though fully set forth herein.

28. This is a claim for treble damages and penalties under the False Claims Act ("FCA"). The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. Section 3729(a)(1)(B). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of damages sustained by the Government. 31 U.S.C. Section 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. Section 2461 note, Public Law 104-410]).

29. The courts have held that violations of the False Claims Act can include false statements regarding eligibility to participate in a federal program. See, e.g., *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 116 (2d Cir. 2010), rev'd on other grounds, 131 S.Ct. 1885 (2011) ("[C]laims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program.").

30. Thus, Defendants' certifications regarding program eligibility and for loan forgiveness, including the loan application and forgiveness applications themselves, violated the False Claims Act because they were false and resulted in payments of Government program funds to defendants for which they were ineligible.

## VI. RELIEF SOUGHT

31. On behalf of the Government, Relator is seeking judgment for triple damages and civil penalties set forth in 31 U.S.C. Section 3729.

32. Defendants Puma, Monello, Kweon, Pinou, and SWMA received $447,800.00 (and the United States paid) in CARES Act funds as a result of the fraudulent claims set forth above.

Additionally, the United States paid approximately $13,434.00 in processing fees to Defendant Prosperity Bank and approximately $4,478.00 in interest in respect of the loan.

33. Defendant IOS further received $2,920,545.77 in CARES Act funds in the form of loans which were forgiven by the United States as a result of the false claims set forth above.

34. Accordingly, Relator seeks judgment in the amount of $10,158,773.31 against the Defendants and in favor of the United States, together with costs, interest, civil penalties of $11,000 against each Defendant for each instance of false claim, an appropriate *qui tam* award, and such other and further relief as the Court deems just and proper.

## VII. <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully submitted,

Reid T. Murdoch, Esq.
Of Counsel, Witte Law Office
*Attorney for Relator*
6125 Havelock Avenue
Lincoln, NE 68507
Tel: (402)-467-5080

Dated: New York, New York
June 29, 2026